UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SIRINA FIRE PROTECTION CORP.,                      Docket No.

                                        Plaintiff,        **COMPLAINT**

                    -against-

AMEC CONSTRUCTION MANAGEMENT, INC.,

                                        Defendant
------------------------------------------------------------------------X

RECEIVED
JUN 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

The plaintiff, Sirina Fire Protection Corp., by its counsel, Goetz Fitzpatrick LLP, as and

for its Complaint against the defendant, AMEC Construction Management, Inc., alleges, upon

information and belief:

## INTRODUCTION

1.      This action arises out of the construction of The New York Times Headquarters

Building (the "Building") in which Sirina Fire Protection Corp. ("Sirina"), a subcontractor, pursuant

to an agreement with AMEC Construction Management, Inc. ("AMEC"), the contractor, was

required to fabricate and install the sprinkler system for the Building.

2.      Sirina's construction efforts were impeded by the arbitrary, negligent and destructive

actions of AMEC. Among other things, these actions impeded Sirina's ability to complete its work

in a productive and timely manner. It also required Sirina to expend additional monies in labor and

material – expenses that were not anticipated by the subcontract.

3.      In addition, AMEC continues to withhold monies owed to Sirina under the original

subcontract as well as for certain change order work performed by Sirina.

4.      This Complaint seeks the recovery of the contract balance, unpaid change orders

together with the additional damages caused by AMEC's conduct.

**PARTIES**

5.      Plaintiff, Sirina, is a corporation organized and existing under the laws of the State of New York.  Its principal place of business is located at 151 Herricks Road, Garden City Park, New York, New York.

6.      Defendant, AMEC, is a foreign corporation with its principal place of business located in Fort Lee, New Jersey.

**JURISDICTION AND VENUE**

7.      The Court has jurisdiction of this action based upon 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount at issue exceeds $75,000.

8.      Venue is proper in this District because the contract at issue in this action contains a forum selection clause naming New York as the County in which this action must be commenced.

**FACTUAL ALLEGATIONS COMMON
TO ALL CLAIMS FOR RELIEF**

9.      In November 2003, The New York Times Building, LLC ("NY Times") entered into a written contract AMEC by which AMEC was to furnish to NY Times all necessary labor, material, equipment and supervision for the construction The New York Times Headquarters Building located at 620 Eighth Avenue, New York, New York (the "Project" and/or the "Contract").

10.      Pursuant to the Contract, on or about February 19, 2004, AMEC entered into a subcontract with Sirina by which Sirina was to coordinate, fabricate and install a combined fire standpipe and sprinkler system for the core and shell of the Project (the "Subcontract").

11.      The original Subcontract was for the lump sum of $2,900,000.  Thereafter AMEC approved change orders totaling $561,013.  Accordingly, the revised adjusted base Subcontract

amount totaled $3,461,013.

**The Construction of the Project**.

12.    The Project was delayed and impeded at the earliest stage of construction and continuing throughout as a result of, among other things, AMEC's failure to coordinate the work, manage the site properly and properly manage the Project. Put another way, AMEC failed to fulfill its duties and responsibilities as the construction manager for the Project. AMEC's failures caused Sirina to suffer a loss of productivity, delays, additional costs, etc.

**The Project's Start Date was Delayed**.

13.    Sirina was to start is work on the Project in November 2004. Unfortunately, AMEC experienced a major delay at the start of the Project and was forced to direct Sirina to delay the start of its work until the Fall of 2005, approximately ten months late.

14.    This revised schedule, which anticipated Sirina commencing its work on the Project in the Fall of 2005, was changed once again and AMEC directed Sirina to commence their work in June of 2005. Despite a lack of proper notice, Sirina responded quickly to AMEC's directive and mobilized.

**Lack of a Concrete Slab**.

15.    When Sirina mobilized, however, they expected to be working off of a previously installed concrete slab which is customary and standard in the industry and anticipated by the Subcontract. Instead, Sirina was forced to work from an uneven dirt surface. In fact, in many cases, dirt surface areas existed where underground piping had not even been backfilled. The existing substandard conditions were the direct result of AMEC's mismanagement of the Project.

3

## Lack of Concrete on the Metal Deck Above the Basement.

16.    Another problem that Sirina was faced while working in the basement of the Building – which had a direct impact on its labor and productivity and material costs – was the lack of concrete on the metal deck above the basement level.  According to the Project schedule, this concrete should have been in place by the time Sirina commenced its work on the Project.  Indeed, had the concrete been in place, as anticipated by the Subcontract, Sirina would have simply been able to drill into the concrete and insert anchors to support the required pipe hangers for the performance of its work.  Rather, the lack of concrete required Sirina to utilize two crews – one in the basement and one on the metal deck above the basement.

17.    The lack of concrete work surface was prevalent throughout the building and caused Sirina numerous delays and additional costs.  In particular, the lack of concrete required Sirina to carry its pipe by hand rather than roll it in on dollies as was customary.  As a result, Sirina was unable to, as is customary in the industry and anticipated by the Subcontract, to fabricate the pipe in 21-foot sections and then roll them into place on the existing concrete slab.  Here, Sirina was required to fabricate the pipe in 7-foot lengths to allow for manual handling which increased, exponentially, Sirina's labor costs.  In addition, Sirnia's use of 7-foot length of pipe required the installation of three additional supports and two additional couplings for every 21-feet of pipe installed.  As a result, Sirina used three times the couplings on the Project at .5 man hour per coupling.

18.    Also, the lack of concrete did not permit Sirina to use rolling lifts to raise its pipe and provide secure platforms for its workers.  On many occasions because of the lack of a concrete slab, Sirna was forced to use stepladders placed on planks and/or plywood which resulted in a loss of

4

productivity of its labor force.

### Lack of Adequate Hoist Capacity.

19.    Although required by the Subcontract, AMEC failed to provide adequate hoist capacity. Indeed, on average, Sirina was required to wait 45 to 60 minutes to utilize the hoist which made it extremely difficult and inefficient for moving men and material up and down the Building.

### The Request for Contract Adjustment.

20.    All of the failures of AMEC, i.e., lack of concrete on the metal deck of certain floors, lack of concrete in the basement, inadequate hoist capacity, delay in the start time, no proper notice for the actual start time, etc., have caused Sirina damages in excess of $2,740,769.

21.    Sirina filed a Request for Contract Adjustment with AMEC seeking payment of the $2,740,769 (the "Claim").

22.    AMEC has failed to pay any portion of the Claim.

### The Unpaid Change Orders.

23.    As a result of certain actions (and, in some instances inactions) of AMEC and its agents, Sirina was required to perform certain change order work for which AMAC has refused to compensate Sirina, despite Sirina's repeated demands for payment.

24.    These additional costs and work relate to: (1) additional insurance charges that Sirina incurred as a result of delays that AMEC caused (Change Order No. 579 at $4,070.00) and (2) relocation of temporary fire department connection on 8th Avenue (Change Order No. 580 at $786) (collectively, the "Outstanding Change Orders").

25.    The Outstanding Change Orders total $4,856.

### Sirina Completes the Subcontract Work.

26.    Sirina has completed all of its work on the Project.

**Non-Payment**.

27.    Sirina submitted, pursuant to the Subcontract, payment applications, seeking payment for, among other things, the Subcontract balance of $62,030.

28.    Although the money is due and owing, AMEC refuses to make payment in whole or in part of such Subcontract balance.

29.    In addition, as set forth above, AMEC refuses to compensate Sirina for the Outstanding Change Orders in the amount of $4,856 and for its delay and loss of productivity claim in the amount of $2,740,769.

30.    Sirina duly performed fully and completely all work under the scope of work of the Subcontract and all extra work it was directed to perform by AMEC.  It is entitled to payment.

## CLAIMS FOR RELIEF

### COUNT 1
### (Breach of Contract)

31.    Sirina incorporates the allegations set forth in Paragraphs 1 through 30 of this Complaint.

32.    Sirina has performed all of its obligations and work under the Subcontract.

33.    AMEC materially breached the Subcontract by failing and refusing to pay Sirina the monies due under the Subcontract, i.e., the Subcontract balance, the Outstanding Change Orders and the Claim.

34.    AMEC materially breached the Subcontract by, among other things, failing and refusing to manage the Project properly, coordinate the contractors and provide the proper

conditions for Sirina to perform the Subcontract work.

35.    As a result of AMEC's actions and, in some instances, inactions, Sirina was required to perform and has performed additional and extra work for which Sirina is entitled to payment.

36.    AMEC has failed and refused to pay Sirina for this additional and extra work.

37.    These actions constitute a material breach of the subcontract

38.    As a direct result of AMEC's breach of the Subcontract, Sirina has sustained substantial damages.

## COUNT 2
### (Breach of Good Faith and Fair Dealing)

39.    Sirina incorporates the allegations set forth in Paragraphs 1 through 38 of this Complaint.

40.    AMEC breached the Subcontract by failing and refusing to deal fairly and in good faith with Sirina and by repeatedly taking actions to destroy or injure Sirina's right to receive the fruits of the Subcontract.

41.    As a direct result of AMEC's breach of good faith and fair dealing, Sirina has sustained substantial damages.

## COUNT 3
### (Unjust Enrichment)

42.    Sirina incorporates the allegations set forth in Paragraphs 1 through 41 of this Complaint.

43.    AMEC has been unjustly enriched by causing Sirina to perform substantial work on the Project, accepting this work, enjoying the benefits of this work and refusing to pay for it.

44.    Accordingly, Sirina is entitled to payment for the work it performed under the

7

Subcontract.

## COUNT 4
### (Quantum Meriut)

45.   Sirina incorporates the allegations set forth in Paragraphs 1 through 44 of this Complaint.

46.   Sirina performed all work as set forth in the Subcontract and incurred costs as set forth in the Change Orders and the Claim all at the direction of AMEC.  And, AMEC promised to pay to Sirina the reasonable value for such work.

47.   The reasonable value for such work is $6,206,638 of which $2,807,628 remains unpaid.

48.   As a result of AMEC's refusal to pay for Sirina's work on the Project, Sirina has been damaged in the amount of $2,807,628.

## REQUEST OF RELIEF

Based upon the facts, Sirina demands judgment against AMEC as follows:

1.   On Count 1, compensatory damages in an amount to be determined, but in no event less than $2,807,628, together with appropriate pre- and post-judgment interest and costs;

2.   On Count 2, compensatory damages in an amount to be determined, but in no event less than $2,807,628, together with appropriate pre- and post-judgment interest and costs;

3.   On Count 3, compensatory damages in an amount to be determined, but in no event less than $2,807,628, together with appropriate pre- and post-judgment interest and costs;

4.   On Count 4, compensatory damages in an amount to be determined, but in no event less than $2,807,628, together with appropriate pre- and post-judgment interest and costs;

5.   On all Counts, whatever additional relief the Court deems appropriate, including

interest, court costs and counsel fees.

Dated:  New York, New York
        June 12, 2008

                                    Yours, etc.,

                                    GOETZ FITZPTRICK LLP


                                    By: _Donald J. Carbone_
                                         Donald J. Carbone, Esq. (DC-2122)
                                    Attorneys for Plaintiff
                                    Sirina Fire Protection Corp.
                                    One Penn Plaza, Suite 4401
                                    New York, New York 10119
                                    (212) 695-8100
                                    dcarbone@goetzfitz.com

9